IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JIMMY BIRCHFIELD                                                                      PLAINTIFF

v.                                                        CIVIL ACTION NO. 1:19-CV-152-SA-DAS

CITY OF WEST POINT, MISSISSIPPI                                DEFENDANT

ORDER AND MEMORANDUM OPINION

On August 20, 2019, the City of West Point, Mississippi removed this action from the Circuit Court of Clay County, Mississippi, to this Court, premising jurisdiction on the basis of federal question. On July 22, 2020, the City of West Point filed a Motion for Summary Judgment [57]. The Motion [57] has now been fully briefed, and the Court is prepared to rule.

*Relevant Factual and Procedural Background*

Jimmy Birchfield, an African American male who is now 55 years old, initially began working for the West Point Police Department as a part-time auxiliary police officer in July 1998. In September 1998, he became a full-time officer, and he later received a salary increase to that of a corporal in October 2000. In September 2001, Birchfield took another job outside the Police Department but remained a part-time City employee, working over the bike patrol.

In 2005, Birchfield returned to the West Point Police Department full-time as a corporal on patrol duty. He then worked in various roles within the Police Department over the next several years. Around 2008, he began working as an investigator. At some point in 2009, he was promoted to the rank of sergeant. In 2011, Birchfield was moved back to the patrol division from his position in investigations. Then, around 2016, Birchfield was transferred to work in the court as a bailiff. Birchfield avers that he agreed to the transfer to the bailiff position because then Police Chief Tim Brinkley had previously promised him that he would be promoted to lieutenant. Although he did not receive the promotion to lieutenant at that time, according to Birchfield, Chief Brinkley moved him

to the bailiff position "with the understanding that with the overtime he would get he would effectively be making the pay of a lieutenant, without having the rank." Pl.'s Memorandum [63, p. 5].

In early October 2017, following Chief Brinkley's retirement, Avery Cook became the new Police Chief. Chief Cook immediately hired Kenny Meaders to serve as Assistant Chief. According to Birchfield, only a few days after Meaders was hired, Meaders advised Birchfield that he was going to be moved from the bailiff position back to patrol. Birchfield asserts that he did not want to move back to patrol but that he agreed to the transfer because he wanted to be a team player. Thereafter, on July 17, 2018, Birchfield was promoted to the rank of lieutenant. Birchfield's job duties and responsibilities did not change at that time—he remained on the patrol division. However, he did receive a pay increase.

Around the same time that Birchfield was interviewing for the lieutenant promotion, a detective position within the Police Department became available. Birchfield did not apply for the position, asserting that he was unable to do so because he was busy with the interview process for his promotion to the lieutenant rank. Four people were interviewed for the detective position: Paris Petty, Edward Brown, Raven Ross, and Kyle Eaves. A panel of five members, including Meaders, Ramirez Ivy (who was head of criminal investigations), Captain Virginia Rich (who was third in command of the Police Department behind Chief Cook and Assistant Chief Meaders), Jeremy Bell, and Stephen Woodruff interviewed all four of the applicants.

Following the interviews, Edward Brown was selected for the position. But shortly after being awarded the position, Brown decided to leave the Police Department. The Police Department then re-opened the position for applications. This time, Birchfield did apply for the position. Although there were initially four applicants for the position, only Birchfield and Raven Ross applied for the position

when it was re-opened. Ross was a 23-year-old African American female who had been working with the Police Department for a short period of time.

Both applicants were interviewed; however, rather than the five-person interview panel, only Meaders and Ivy conducted the interviews this time. After the interviews were conducted, Meaders and Ivy recommended that Ross be offered the position. Chief Cook agreed and finalized Ross' transfer to the detective position.

On October 19, 2018, Birchfield filed an EEOC Charge against the City of West Point, alleging that the City's failure to promote him to the detective position was because of his age and gender. After receiving a right to sue letter from the EEOC, Birchfield filed suit against the City of West Point in the Circuit Court of Clay County, alleging that the failure to promote him constituted a violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. *See* Complaint [2]. On August 20, 2019, the City timely removed the case to this Court. *See* Notice of Removal [1].

On October 31, 2019, Birchfield filed an Amended Complaint [14] after filing a second EEOC Charge and receiving a second right-to-sue letter. In addition to the original claims, the Amended Complaint [14] included a retaliation claim, wherein Birchfield alleged that he had been subjected to improper retaliatory conduct since the filing of his original Complaint [2]. Specifically, Birchfield alleged that, since he filed his initial EEOC Charge and initiated this action, he had been called into Meaders' office on multiple occasions. Birchfield also alleges that Meaders reprimanded him for frivolous reasons, in addition to threatening to suspend him and decrease his rank and pay. Through the Amended Complaint [14], Birchfield also added Meaders as a defendant, asserting that he was liable for malicious interference with employment. On August 20, 2020, however, a Stipulation of Voluntary Dismissal [64] was filed, through which Birchfield voluntarily dismissed all claims against

Meaders. Thus, the City of West Point is the only remaining defendant in this case. In the present Motion [57], the City of West Point requests dismissal of all claims against it.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240 at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of Louisiana, LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As noted above, Birchfield has asserted an ADEA failure to promote claim, a Title VII failure to promote claim, and a Title VII retaliation claim. The City has moved for summary judgment on all claims. The Court will address each of them in turn.[1]

I.  *ADEA Failure to Promote Claim*

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, 'a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009)).

"In analyzing an ADEA claim, the court employs the *McDonnell Douglas* burden-shifting framework." *Vanderberg v. Rexam Beverage Can Co.*, 2017 WL 507610 at *3 (N.D. Miss. Feb. 7, 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Applying the *McDonnell Douglas* framework, "a plaintiff relying on circumstantial evidence must put forth a *prima facie* case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (quoting *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). Then, "[i]f the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason

---

[1] Prior to addressing Birchfield's ADEA claim and his Title VII claim, the Court notes Birchfield's argument that he is part of an additional protected class—age plus sex. This Court recently rejected the same contention in another case, specifically analyzing Fifth Circuit cases on this issue. *See Cash v. Walgreen Co.*, 2020 WL 1846535, at *4, n. 4 (N.D. Miss. Apr. 10, 2020). As in *Cash*, the Court rejects Birchfield's argument on this issue and will instead analyze his ADEA and Title VII claims separately.

5

given is merely pretextual." *Id*. (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)).

    a.    *Prima Facie Case*

To establish a *prima face* case, Birchfield must show that: (1) he was within the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment decision; and (4) he was treated less favorably than a similarly situated younger employee. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)); *see also Stancu v. Hyatt Corp./Hyatt Regency, Dallas*, 2018 WL 4471786 at *4 (N.D. Tex. Aug. 28, 2018) (citing *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. Appx. 390, 395 (5th Cir. 2008); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998)) ("[F]or a plaintiff to establish a *prima facie* case of failure to promote in violation of the ADEA, he 'must show: (1) he was over forty, (2) was qualified for the position sought, (3) was not promoted, and (4) the position was filled by someone younger or the failure to promote was due to his age.'").

For purposes of the present Motion [57], the City of West Point disputes only the third element—that Birchfield was subjected to an adverse employment decision. In other words, the City does not dispute that Birchfield is over 40 years of age, that he was qualified for the detective position, and that the position was filled by someone younger than him. Rather, the City's only contention is that the detective position was not a promotion from Birchfield's patrol division position. Thus, the City argues that the decision not to award the detective position to Birchfield did not constitute an adverse employment decision.

"Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Wilson v. U.S. Dep't of Comm.*, 2020 WL 5633059 at *4 (S.D. Miss. Sept. 21, 2020) (quoting *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019)) (additional citation omitted). "An employment action that does not affect

6

job duties, compensation, or benefits is not an adverse employment action." *Id*. (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)) (additional citation omitted).

The Fifth Circuit has held that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the position to the plaintiff can constitute an adverse employment action." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)) (emphasis in original). Therefore, in order to establish this element of his *prima facie* case, Birchfield must show that the transfer to the detective position would have been a promotion—that is, that the detective position would have been objectively better than the patrol division position, and not a purely lateral transfer. *Id*.

"In determining whether the new position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious." *Id*. at 614 (citations omitted). Importantly, the inquiry is an objective one, as "neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Id*. (citing *Pegram*, 361 F.3d at 283).

Arguing that these factors support its position, the City emphasizes that Birchfield's pay "would have remained the same or possibly decreased if he moved to the detective position." Def.'s Memorandum [58, p. 7]. The City also notes that "[g]iven the rank slots available in investigations, a transfer may have resulted in a loss in rank." *Id*. In addition, the City notes that the detective position

offers less opportunity for career advancement, as employees of the investigations division generally stay at sergeant rank and do not promote to lieutenants. Thus, according to the City, because Birchfield had already been promoted to lieutenant, the transfer would not have been a promotion.

Birchfield opposes the City's characterization of the detective position. He notes that the Job Description describes it as a "specialty position." Birchfield also emphasizes former Chief Brinkley's deposition testimony, wherein he stated that, though he did not personally view a transfer to investigations as a promotion, "most departments view investigations as being a promotional opportunity" and "in some sense it sort of carries a connotation of being a promotional opportunity." [61-12, p. 9-10]. Birchfield also points to Ross' deposition, wherein she confirmed that she believed the detective position was more prestigious than a patrol position. [61-23, p. 12].

Although taking into account the City's arguments as to the lack of a pay increase that the detective position would have yielded and the inability for Birchfield to receive an increase in rank while in the detective position, the Court finds that Birchfield has established that, at a minimum, a genuine issue of material fact exists as to whether the detective position was objectively better than his patrol position. Particularly telling, in the Court's view, is the deposition testimony of former Chief Brinkley and Ross herself. The fact that the detective position is listed as a "specialty position" also weighs in Birchfield's favor. Furthermore, it appears clear that a detective position is one that requires extensive skill, education, and experience. Ultimately, taking all of these factors into account, the Court finds that the Plaintiff has established the existence of a genuine issue of material fact as to his *prima facie* case.

  b. *Legitimate, Non-discriminatory Reason*

Because Birchfield has established a *prima facie* case, the burden now shifts to the Defendant to "produce evidence of a legitimate non-discriminatory reason for the adverse employment action[.]" *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016). Importantly, the City's burden

8

is only one of production, not persuasion. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The burden is satisfied so long as the City clearly sets forth "through the introduction of admissible evidence, the reasons for the adverse employment action." *Id.* (quoting *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). This step involves no credibility assessment. *Id.*

The City asserts that Ross was awarded the position because both interviewers recommended her for the position and because she had better writing skills than Birchfield. The City also states that the fact that Birchfield had previously been in investigations but had been reassigned to patrol was considered. Finally, the City relies upon Chief Cook's Affidavit [57-1], wherein he indicated that he would not have transferred Birchfield from his shift supervisor position because he had only recently been promoted to lieutenant supervisor over a patrol shift.

As noted above, no credibility assessment is to be made at this stage in the proceedings. *See Heinsohn*, 832 F.3d at 236. Therefore, the Court finds that the legitimate, non-discriminatory reasons set forth by the City are sufficient to satisfy its burden at this stage in the proceedings.

    *c.*    *Pretext*

The burden now shifts back to Birchfield. *Id.* "At the third step, the employee must produce evidence, or rely on evidence already produced, that refutes or contests the employer's evidence of a legitimate, nondiscriminatory reason. Stated differently, the employee must produce or rely upon evidence that the employer's legitimate, non-discriminatory reason was only a pretext—that is, 'a false or weak reason . . . advanced to hide the actual . . . reason." *Id.* at 236-37 (citing BLACK'S LAW DICTIONARY (defining 'pretext'); *Burdine*, 450 U.S. at 256). During this final stage of the *McDonnell Douglas* framework, Birchfield's "intermediate burden now merges with the ultimate burden of proving that the employee has been the victim of intentional discrimination." *Pree v. Washington Cty. Bd. of Supervisors*, 2018 WL 522776 at *6 (N.D. Miss. Jan. 23, 2018) (quoting *Burdine*, 450 U.S. at

9

256). Pretext may be established "by showing that the employer's proffered explanation is unworthy of belief." *Maurer v. American Airlines*, 249 F. Appx. 341, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 143).

"Further, in a failure to promote case, 'a showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual.'" *Id*. (quoting *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)). However, in order to prevail under this theory, "the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job." *Id*. (quoting *Price*, 283 F.3d at 723).

Birchfield first contends that he was clearly better qualified for the detective position. He specifically emphasizes that he was a newly promoted lieutenant with over twenty years of law enforcement experience, including over three years of experience as a detective with some of that time being spent as the lead detective. In contrast, Ross was a private, who had never worked as a detective, had been in law enforcement for less than one year, and had only completed the applicable training program for officers about four months prior to the decision.

In addition to these objective factors, Birchfield points to the subjective opinions of various other persons who believed Ross was less qualified for the position than Birchfield. Captain Virginia Rich, who served as Captain over the patrol division at the time Ross was hired, testified "I don't think so. I would say no[]" when questioned as to whether she believed Ross was more qualified for the detective position than Birchfield. [61-22, p. 20]. Freddy Bardley, a former employee of the West Point Police Department, testified that the majority of the Department was surprised when Ross was selected for the detective position. [61-33, p. 7]. The DUI Officer of the West Point Police Department, Alex Jackson, stated that he believed an officer should work patrol for at least two years prior to being able to effectively serve in the investigations department. [61-35, p. 17]. He also

10

testified that, in his opinion, Ross was not more qualified for the detective position than Birchfield. [61-35, p. 17]. Birchfield also notes the deposition testimony of Kyle Eaves, who applied for the detective position the first time it was opened for applications. Eaves testified he did not believe that Ross was more qualified for the position than Birchfield. [61-20, p. 11].

In opposition to these arguments, the City notes that years of experience is only one factor to consider in employment decisions. It also notes that, while many people believed Ross was *less* qualified for the position, both interviewers, Meaders and Ivy, believed Ross was *more* qualified for the position. Both Meaders and Ivy had previously reviewed Ross' writing, and they believed that her writing skills qualified her for the position.[2]

While recognizing the above-referenced relatively high standard that a plaintiff must satisfy to establish that he or she is clearly better qualified, the Court finds that Birchfield has met his burden of establishing the existence of a genuine issue of material fact on this point. Birchfield has provided specific deposition testimony from various individuals who testified that they did not believe Ross was more qualified for the position. Additionally, objectively considering the credentials of both Birchfield and Ross, including the amount of time each had been with the Department and the experience that each had gained through their employment with the Department, the Court finds that Birchfield has come forward with sufficient evidence to survive summary judgment.

Although this finding alone would be sufficient, the Court also feels compelled to note an additional argument supporting Birchfield's position. Birchfield alleges that Chief Cook specifically admitted that Ross was selected for the position because of her young age. Birchfield testified that, after Ross was selected, he had a conversation with Chief Cook, wherein Chief Cook stated:

> Well, Burt, it is just the fact that, you know, I'm just building a new department and I'm building younger people for the position, and I just feel like at this point, you know, we're just going to deal with a younger

---

[2] Birchfield attempts to rebut this argument by emphasizing that he received a certificate for successfully completing a report writing course in 2007. *See* [61-31].

11

> group at this time. And you already have gotten the lieutenant position and I don't want you to leave the lieutenant position because you are a lieutenant now and I need you there and I just feel like you are abandoning the patrol.

[57-3, p. 89]. Chief Cook admits that the conversation occurred but denies that he made the comment regarding transitioning to a younger group.

The Fifth Circuit has previously held that "[a]n oral statement exhibiting discriminatory animus may be used to demonstrate pretext or . . . as additional evidence of discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)). "The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Id*. (citations omitted).

While the Court acknowledges that Chief Cook denies making the statement, viewing the evidence in the light most favorable to Birchfield, the alleged statement supports his position. In the Court's view, discriminatory animus can easily be inferred from the alleged statement, which appears to be a direct admission of age discrimination. Second, it cannot be seriously disputed that Chief Cook, as the Chief of the entire Department, had sufficient authority over Birchfield to satisfy the second prong.

The City attempts to combat this argument by emphasizing Chief Cook's decision to promote Birchfield to lieutenant shortly before this decision. Stated differently, the City contends that Chief Cook's prior decision to promote Birchfield to lieutenant forecloses Birchfield's argument that Chief Cook harbored any discriminatory animus toward him. The Court disagrees. Rather, the Court finds that a defendant should not be permitted to point to previous decisions alone to negate a claim of discrimination. To hold otherwise would, in the Court's view, create a slippery slope. At a minimum, Birchfield has shown that a genuine issue of material fact exists as to whether the City's stated reasons for its employment decision were pretextual.

Based upon the foregoing application of the *McDonnell Douglas* framework, Birchfield has established the existence of genuine issues of material fact as to his age discrimination claim. Summary judgment is therefore denied as to that claim.

II.     *Title VII Failure to Promote Claim*

As noted above, in addition to his age discrimination claim, Birchfield has asserted a Title VII claim based upon gender discrimination. In pertinent part, Title VII provides:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). As with Birchfield's ADEA claim, the *McDonnell Douglas* framework applies to his Title VII claim. *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016); *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007) ("Where . . . there is not evidence of direct discrimination, Title VII discrimination claims based on circumstantial evidence are analyzed under the framework established in *McDonnell Douglas*[.]").

The application of the *McDonnell Douglas* framework as to Birchfield's gender claim is largely synonymous to his age claim. He can satisfy the *prima facie* case because he is a member of a protected class, was qualified for the detective position he sought, and was not selected for the position which was offered to someone outside his protected class. *See Haire v. Board of Supervisors of Louisiana State Univ. Agricultural and Mechanical College*, 719 F.3d 356, 363 (5th Cir. 2013) ("[A] Title VII plaintiff alleging gender discrimination must show (1) that [he] is a member of a protected class; (2) that [he] was qualified for the position sought; (3) [he] was subject to an adverse employment action; and (4) [he] was replaced by someone outside [his] protected class or was treated less favorably than other similarly situated employees outside [his] class.").

13

As for the second step of the analysis, the City relies upon the same legitimate, non-discriminatory reasons for its decision—that both interviewers recommended Ross for the position and that her skills better equipped her for the position. These articulated reasons are sufficient to satisfy the City's burden at this stage in the proceedings.

As to the third step of the *McDonnell Douglas* framework, Birchfield relies upon the same arguments set forth above—particularly, that he was clearly more qualified for the position than Ross. The Court has already analyzed those arguments in the context of Birchfield's age discrimination claim and finds no need to repeat that analysis here. The Court finds that Birchfield has set forth sufficient evidence to survive summary judgment on the issue of whether he was clearly more qualified for the position.

Particularly as to Birchfield's gender claim, however, the City emphasizes testimony from Birchfield's deposition. Specifically, the City notes that Birchfield said "I really don't understand that part of it. . . I don't really know. I don't really have any understanding of that one" when he was asked for the basis of his gender discrimination claim. [57-3, p. 92-93]. Birchfield also testified "I have no comments on that" when further questioned about the basis for the claim. [57-3, p. 93]. The City therefore asserts that "Plaintiff provided no evidence to support his gender claim and apparently does not himself believe that gender was a factor in the decision. His gender discrimination claim should be dismissed as a matter of law." Def.'s Memorandum [58, p. 12].

Although cognizant of the City's argument on this point, the Court finds that, while the above-referenced statements from Birchfield's deposition may be admissible at trial to discount Birchfield's credibility, they are not alone sufficient to warrant summary judgment. As noted above, Birchfield has come forward with sufficient evidence to survive summary judgment as to whether he was clearly more qualified for the position than Ross. And, while the statements are potentially damaging to his claim, the determination as to the weight to give them is better left to the jury at trial, as opposed to

14

this Court at the summary judgment stage. The Court rejects the City's argument that these statements, without more, are dispositive of Birchfield's Title VII failure to promote claim. Summary judgment is therefore denied on that claim.

> III.   *Title VII Retaliation Claim*

Birchfield has also asserted a Title VII retaliation claim. Specifically, in his Second Amended Complaint [31], Birchfield alleges that "[s]ince filing the Complaint in July 2019, [he] has been called into the office by Assistant Chief Kenny Meaders on at least six (6) occasions, and Meaders has verbally reprimanded [him] for frivolous reasons." Birchfield also avers that Meaders has threatened to suspend him and take away his rank and pay. Finally, Birchfield contends that "Meaders and the City of West Point arrested Plaintiff's brother and charged him with aggravated assault, while the person who shot at his brother has not been arrested or charged with a crime." [31].

To meet his initial burden on a claim for retaliation under Title VII, a plaintiff "must show that '(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.'" *Cabral v. Brennan*, 853 F.3d 763, 767-68 (5th Cir. 2017) (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)).

Here, for summary judgment purposes, the first and third elements are easily satisfied. It cannot be seriously disputed that the filing of an EEOC Charge constitutes a protected activity. *See, e.g.*, *Garvin v. Southwestern Correctional, L.L.C.*, 391 F. Supp. 3d 640, 652 (N.D. Tex. June 18, 2019) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)) ("For the first element, an employee has engaged in protected activity if he has (1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). And as to the third element, the short period of time between the filing of the EEOC Charge and the

15

purported adverse actions is sufficient. *See Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 618-619 (5th Cir. 2020) ("If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met her burden to establish a *prima facie* case of retaliation."); *Garvin*, 391 F. Supp. 3d at 653 (citations omitted) ("Evidence for a causal connection includes: temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures."); *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (holding that causal connection can be satisfied by reliance upon "a chronology of events from which retaliation may plausibly be inferred").

The City concedes, for purposes of the present Motion [57], that the first and third elements are satisfied, instead focusing its argument for dismissal on the second *prima facie* element. On this point, the City contends that Birchfield's allegations as to the retaliation claim do not constitute an adverse employment action. At this juncture, it is important to note that the purported adverse employment actions in the context of Birchfield's retaliation claim—frivolous reprimands, threatened suspensions, loss of rank, and pay decreases, as well as the purportedly inappropriate arrest of Birchfield's brother—differ from the adverse employment action discussed above in connection with his failure to promote claims—that is, the failure to award Birchfield the detective position. In other words, the failure to promote claims concern the City's decision not to transfer Birchfield to the detective position, while the retaliation claim concerns conduct that occurred after Birchfield filed his EEOC Charge and after he initiated this action.

"A materially adverse action, in the retaliation context, is one which might 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Jenkins*, 784 F.3d at 269 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d

16

345 (2006)). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Cabral*, 853 F.3d at 767.

As noted above, Birchfield contends that, after he filed his EEOC Charge, he was baselessly called into Meaders' office on multiple occasions, that he received frivolous reprimands, and that he was threatened with deductions in his rank and pay. Although the City contends that these employment actions were to address legitimate concerns, the Court must, at this stage in the proceedings, view this evidence in the light most favorable to Birchfield. He asserts that these actions would dissuade a reasonable employee from engaging in protected activity. The Court agrees. Specifically, the Court finds that a reasonable employee may be dissuaded from making a discrimination charge if doing so would result in the employee being subjected to allegedly frivolous reprimands and threats to the employee's rank and pay.

Accordingly, the Court finds that Birchfield has established the existence of a genuine issue of material fact as to whether he was subjected to an adverse employment action for purposes of his retaliation claim. Birchfield has established a *prima facie* case of retaliation under Title VII.

The Court notes that the *McDonnell Douglas* burden shifting framework is also applicable to a retaliation claim. *See Badgerow*, 974 F.3d at 618-619 (applying *McDonnell Douglas* to a Title VII retaliation claim). However, in the case at bar, the City only moves for summary judgment based upon the above-referenced argument that Birchfield was not subjected to an adverse employment action. Having rejected the City's only argument, the Court sees no need to analyze the remaining steps of the *McDonnell Douglas* framework as to the retaliation claim.

*Conclusion*

As set forth above, Birchfield has established the existence of a genuine issue of material fact as to all three claims. Summary judgment is therefore inappropriate, and the City's Motion [57] is DENIED.

SO ORDERED, this the 27th day of January, 2021.

/s/ Sharion Aycock  
UNITED STATES DISTRICT JUDGE
