IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JIMMY BIRCHFIELD                                                                    PLAINTIFF

v.                                                         CIVIL ACTION NO. 1:19-CV-152-SA-DAS

CITY OF WEST POINT, MISSISSIPPI                                        DEFENDANT

### ORDER

Now before the Court is the City of West Point's Motion *in Limine* [94]. The Motion [94] has been fully briefed and is ripe for review. Having reviewed the filings and the relevant authorities, the Court is prepared to rule.

*Applicable Standard*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *King v. Cole's Poultry, LLC*, 2017 WL 532284, at *1 (N.D. Miss. Feb. 9, 2017) (quoting *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted)). "Evidence should not be excluded *in limine* unless it is clearly inadmissible on all potential grounds." *Harkness*, 2015 WL 631512 at *1 (quoting *Fair v. Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011)). To that end, "[e]videntiary rulings 'should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context.'" *King*, 2017 WL 532284 at *1 (quoting *Rivera v. Salazar*, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008)) (additional citations omitted). "Motions *in limine* should be narrowly tailored to address issues which will likely arise at trial and which require a pre-trial ruling due to their complexity and/or the possibility of prejudice if raised in a contemporaneous objection." *Id*. (quoting *Estate of Wilson v. Mariner Health Care, Inc.*, 2008 WL 5255819, at *1 (N.D. Miss. Dec. 16, 2008)).

*Analysis and Discussion*

The City of West Point requests that the Court exclude Birchfield and/or his counsel from "enlisting evidence, making argument or presenting evidence" regarding the following issues:

> 1. Evidence related to Raven Ross's social media post[,] subsequent newspaper article and apology from Ross related to the posting in April/May 2019;
>
> 2. Video of Raven Ross that she posted on Snapchat apparently after she was transferred to the investigators job unrelated to her job. The video appears to have been posted or copied on October 13, 2018. Even if the Snapchat video was posted prior to her transfer in August 2018, Plaintiff provided no evidence that any decision-maker in the case was aware of or considered the video as part of the transfer decision.

[95] at p. 1. The Court will address these requests in turn.

As to the first request, the City asserts that it anticipates Birchfield will "attempt to introduce evidence of [a] social media matter and subsequent newspaper articles and an apology of Ross regarding comments that she made in the social media post." *Id*. at p. 3. According to the City, "[t]he social media post of Ross and newspaper articles related to that post were in late April and May of 2019 and had no bearing on the decision to transfer Ross to detective." *Id*.

Ross was questioned about the social media post during her deposition and testified as follows:

> Q. (Mr. Woodruff) All right. Says in a Facebook April 25th - - April 25 under the heading Feeling Cute, Detective Raven Ross, who is in uniform and wearing a flower garland on her head posted, "Might go write yo grandma a ticket for driving with them bad legs." Did you put that on your Facebook page?
>
> A. Yes, sir. I did.
>
> Q. And then somebody responded, "Don't pull my granny over," and then you responded, "She better have her dentures in when talking to me or that's another citation." And you wrote that too?

> A. Yes, sir.
>
> Q. Now, if you go to the next - - my understanding, this was in - - the post was in April of 2019, correct?
>
> A. Yes.
>
> . . .
>
> Q. Okay. Did you get in trouble for this Facebook post?
>
> A. Yes, I did.
>
> . . .
>
> Q. And the next page is an apology; is that correct?
>
> A. Yes, sir.
>
> Q. And you wrote that; is that correct? Did you post that on the Facebook page or how did you get that apology to the newspaper writer?
>
> A. It was posted under the article.
>
> Q. So you posted it right on the article; that apology?
>
> A. Yes.

[61], Ex. 23 at p. 24-26.

On May 6, 2019, the Daily Times Leader published an article about Ross' social media post and subsequent apology. *See* [61], Ex. 42. The article included quotes from the Mayor and a City Councilman.

The City seeks to exclude all of this evidence *in limine*. The City emphasizes that Ross made the Facebook post and apology in April 2019, and the article was published in May 2019 (*after* the decision to transfer Ross to the detective position was made). Next, the City avers that "the newspaper article and much of what's included in the article contains inadmissible hearsay." [95] at p. 3. Finally,

the City asserts that, even if relevant, the probative value of the evidence is substantially outweighed by the risk of unfair prejudice.

In response, Birchfield asserts that the evidence is admissible because, though Ross was subjected to a verbal reprimand, she was not written up for the conduct, which shows that Ross, as a young female, receives preferential treatment from the City of West Point Police Department. Specifically, Birchfield states that "[t]his evidence is probative to show the state of mind and discriminatory animus of Meaders and Ivy. It also is relevant to show that West Point treats young females better than older males." [98] at p. 3.

As to the timing issue, the Court notes that the subject employment decision occurred in August 2018—less than one year prior to the social media post. Although the social media post therefore could not have in any way impacted the transfer decision, it is at least plausible that the City's handling of the matter supports Birchfield's theory that younger employees and female employees received preferential treatment at the West Point Police Department. However, the Court need not definitively decide that issue in the abstract; rather, it will delay ruling until trial so that questions of foundation and relevancy can be resolved in proper context. *See King*, 2017 WL 532284 at *1.[1]

The City's second request concerns a Snapchat video of Ross. The Court has reviewed the video, which was attached to Birchfield's Summary Judgment Response [61]. Birchfield's Response [98] to the present Motion [94] includes a transcription of the video, a portion of which the Court will adopt and set forth below:

> Anybody that want to ask me to go out to a party or a bar or anywhere. I'm letting you know that I ain't fucking going. I ain't mother fucking going. Fine. I ain't fixing to waste my time or nothing like that being around stinking ass cigarettes or fucking blunts. I don't want to be on

---

[1] In response to the City's hearsay argument, Birchfield argues that it is not hearsay because Birchfield does not seek to use the statements to prove the truth of the matter asserted. The Court agrees with Birchfield's argument, at least for purposes of the present Motion [94].

> the floor dancing with the drunk people that's always on the floor dancing, they can barely stand up . . .

[61], Ex. 45.

The City asserts that the video "appears to have been posted or copied on October 13, 2018. In the video, Ross speaks about going to bars and uses foul language. She does not talk about job issues and the video was posted when she was not at work. The video appears to have been placed on social media after Ross was transferred, although no witnesses were clear on the date of posting." [95] at p. 2. Since the date of the post is not definitively known, the City also points to the depositions of Assistant Chief Meaders and Lieutenant Ivy, both of whom testified that they were not aware of the video at the time they recommended Ross for transfer.

Birchfield's counter is synonymous to his argument in connection with the Facebook post. Specifically, he notes that Ross was not disciplined for the post and argues that "the evidence is relevant because it shows that the young female, Raven Ross, is still receiving preferential treatment. This evidence is probative to show the state of mind and discriminatory animus of Meaders and Ivy. It also is relevant to show that West Point treats young females better than older males." [98] at p. 4.

The Court agrees with the City's general premise that the video is not job-related, does not appear to have been made while she was at work, and does not in any way reference her job. However, as with the evidence surrounding Ross' Facebook post, the Court finds that it is at least possible that the City's handling of this matter is probative of the City giving preferential treatment to younger employees and/or female employees. Therefore, while recognizing the City's concerns, the Court cannot find that the evidence is clearly inadmissible on all potential grounds. *See Harkness*, 2015 WL 631512 at *1 ("Evidence should not be excluded *in limine* unless it is clearly inadmissible on all potential grounds."). As a result, the Court will consider the admissibility of this evidence at trial in the proper context.

5

*Conclusion*

For the reasons set forth above, the City's Motion *in Limine* [94] is DENIED. The Court will address these matters at trial. Should the City desire to address these matters outside of the presence of the jury, the City shall notify the Court and appropriate arrangements, if necessary, will be made at that time.

SO ORDERED, this the 28th day of February, 2022.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE